IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

| | |
|---|---|
| UNIVERSAL SURVEILLANCE CORPORATION d/b/a UNIVERSAL SURVEILLANCE SYSTEMS, <br><br> Plaintiff, <br><br> v. <br><br> CHECKPOINT SYSTEMS, INC., <br><br> Defendant. | ) Action Pending in Northern District <br> ) of Ohio <br> ) <br> ) Case No. 5:11-CV-01755-JRA <br> ) <br> ) <br> ) Judge John R. Adams <br> ) Mag. Judge George J. Limbert <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT CHECKPOINT SYSTEMS, INC.'S MOTION FOR AN ORDER
COMPELLING THIRD-PARTY WITNESS ALL-TAG TO PRODUCE DOCUMENTS
AND PRESENT A CORPORATE REPRESENTATIVE TO BE DEPOSED
AND ACCOMPANYING MEMORANDUM OF LAW IN SUPPORT**

Checkpoint Systems, Inc. ("Checkpoint") moves for an order compelling third-party witness All-Tag Security Americas, Inc. ("All-Tag") to produce documents and to present a corporate representative to be deposed. Pursuant to Rule 45, Checkpoint served subpoenas on All-Tag for limited documents and testimony, but after lengthy negotiations All-Tag has refused to produce an adequate set of responsive documents and has refused to present a deponent.

This motion should be granted for the reasons set forth in the memorandum of law in support.

**MEMORANDUM OF LAW**

**BACKGROUND**

A. **USS's Antitrust Lawsuit against Checkpoint**

Checkpoint is the defendant in *Universal Surveillance Corporation v. Checkpoint Systems, Inc.*, Case No. 11 cv 1755 JRA (N.D. Ohio), in which the plaintiff USS accuses Checkpoint of violating the antitrust laws by allegedly foreclosing competitors from selling

223185

security devices called Electronic Article Surveillance ("EAS") products, such as labels that appear on consumer goods and cause an alarm to sound during shoplifting. USS alleges, among other things, that Checkpoint has foreclosed competitors from selling EAS systems in the Relevant Market it has defined (i.e., the Food and Drug market and the Drug and Pharmacy Market), and that Checkpoint has bundled its EAS products with other products (both EAS and non-EAS) in an anticompetitive manner. (Ex. 1, Second Amended Complaint, ¶¶ 45-57.) USS seeks damages from Checkpoint in excess of $250 million.

Both Checkpoint and USS have served subpoenas on numerous third parties for both documents and testimony. Checkpoint's third-party discovery has included requests for various competitors in the market for Electronic Article Surveillance to produce sales data and other competitive information. An Amended Stipulated Protective Order is in place that allows any party or non-party to designate information produced as <u>Highly Confidential–Attorney's Eyes Only</u>. (Ex. 2, Amended Stipulated Protective Order.) Most third parties producing documents have elected that designation. In response to the parties' subpoenas, dozens of third parties have produced responsive documents (and presented a deponent when so noticed) without the need for motion practice. This motion marks the first time that a party has had to seek a court's assistance to secure compliance with a subpoena.

    **B.    All-Tag**

All-Tag competes with Checkpoint and USS in the EAS market. All-Tag's EAS product brochure notes that it is "the second largest global manufacturer of 8.2 MHz Radio-Frequency (RF) Anti-Theft Labels[.]" (Ex. 3, All-Tag brochure, Electronic Article Surveillance (EAS) Products.) Notably, USS alleges that RF labels, but not labels using other technologies, are suitable for use in the Relevant Market that USS has defined. (Ex. 1, Second Amended Complaint, ¶¶ 17-23.)

### C.  Checkpoint Subpoenas to All-Tag

In order to seek limited documents and testimony necessary to its defense of the antitrust claims against it, Checkpoint served subpoenas on All-Tag for documents dated November 13, 2012 and December 20, 2012, and a subpoena for deposition testimony under Rule 30(b)(6) dated January 4, 2013.[1] (Ex. 4, Checkpoint Subpoenas to All-Tag.)

All-Tag never served written objections to Checkpoint's subpoenas.[2]

After Checkpoint served its December 10, 2012 subpoena, counsel for All-Tag emailed on December 11, 2012, to state that All-Tag would not produce responsive documents because the information was proprietary—notwithstanding the protective order in place—and because the information may not be readily available for certain years requested. (Moore Decl. ¶ 13.)

After receiving that communication, and despite the fact that All-Tag's failure to respond to the discovery constituted a waiver of all objections, *see* S.D. Fla. L.R. 26.1(g)(3)(A), Checkpoint made multiple proposals to All-Tag to reduce the scope of production and attempt to limit disclosure of the information that All-Tag claimed was proprietary. (Moore Decl. ¶¶ 14, 20, 22, 27, 32.)

In particular, Checkpoint offered a proposal where All-Tag would produce a sales *summary* (not all documents) that identified the customers to whom it had sold each EAS products, the quantity of each EAS product sold to each customer, and the total revenues from the sales of each EAS product—thus preventing the disclosure of any individual price points.

---

[1] Per agreement, the subpoena for deposition testimony was served via email on Michael Eisler of Straus and Eisler, P.A. Mr. Eisler is counsel for All-Tag and is its registered agent for service.

[2] Because All-Tag failed to respond to the discovery at all, Checkpoint need not set forth the individual requests and responses (there were none) as set forth in SD LR 26.1(h) ("Except for motions grounded upon complete failure to respond to the discovery sought to be compelled or upon assertion of general or blanket objections to discovery," movant must set forth each individual request and objection and bases for same).

(Ex. 5, January 2, 2013 Letter.) Despite repeated follow-up communications, All-Tag did not respond until January 25, 2013—and refused to produce any document. (Moore Decl. ¶¶ 24-26.)

Checkpoint then offered an even narrower proposal—this time, excluding any revenue information—but All-Tag refused again on February 12, 2013. (Moore Decl. ¶¶ 27-31.)

All-Tag also has refused to produce a deponent. Since it issued its January 4, 2013 subpoena for testimony, Checkpoint repeatedly requested deposition dates from All-Tag, but All-Tag did not provide dates until January 25, 2013, when it offered a range of dates in late March. (Moore Decl. ¶¶ 24-26.) When Checkpoint followed up to confirm a date, All-Tag reneged and stated instead, without any legal basis, that Checkpoint should submit written questions pursuant to Rule 31. (Moore Decl. ¶ 31.)

### D. USS Subpoena to Stuart Seidel

After Checkpoint served its first subpoena on All-Tag, USS served a subpoena on Mr. Stuart Seidel, All-Tag's President, dated November 21, 2012, for a deposition to occur on December 17, 2012. (Ex. 6, USS Subpoena to Stuart Seidel.)

Checkpoint requested that USS move Mr. Seidel's deposition until at least after All-Tag produced documents responsive to Checkpoint's first subpoena, but USS refused. (Moore Decl. ¶ 9.) Checkpoint then filed for a Protective Order before the Special Master supervising discovery, seeking the relief that USS be ordered to confer with Checkpoint on deposition dates for Mr. Seidel and that the deposition be re-scheduled. (Ex. 7, Letter to David Cohen.) The Special Master contacted counsel for Mr. Seidel and asked if they would prefer that Mr. Seidel's deposition go forward, but at the risk of a subsequent deposition following document production. (Moore Decl. ¶ 18.) Counsel for Mr. Seidel stated that was their preference, and the Special Master denied Checkpoint's motion. (Moore Decl. ¶ 18.) USS and Checkpoint took Mr.

Seidel's deposition on December 17, 2012, without the benefit of any documents responsive to Checkpoint's subpoenas. (Moore Decl. ¶ 19.)

## ARGUMENT

### I. THIS COURT SHOULD ENTER AN ORDER GRANTING A RULE TO SHOW CAUSE WHY ALL-TAG SHOULD NOT BE HELD IN CONTEMPT.

Despite repeated efforts to resolve the subpoenas on All-Tag through agreement, Checkpoint remains without the critical information it needs for its defense in *Universal Surveillance Corporation v. Checkpoint Systems, Inc.* All-Tag drew out the negotiations but has ultimately refused to comply. That failure to comply has prejudiced Checkpoint: although Checkpoint first sought discovery from All-Tag months ago, the fact discovery cutoff date of April 5, 2013 is now approaching. Thus, Checkpoint must now seek relief in this court to enforce its subpoenas. *See* Fed. R. Civ. P. 45(e) ("The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena.").

#### A. All-Tag Should Be Compelled To Produce Documents Responsive To Checkpoint's Subpoenas.

All-Tag has not objected to service, relevance, or burden. Thus, any such objections are waived. *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 254 (Bankr. S.D.N.Y 2005) (failure to make timely objection to service acts as waiver); *see also* S.D. Fla. L.R. 26.1(g)(3)(A) ("Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.").

All-Tag instead asserts that the sales information that Checkpoint seeks is proprietary and confidential. However, an Amended Stipulated Protective Order is already in place that permits All-Tag to restrict the distribution of information to counsel only. (Ex. 2, Amended Stipulated Protective Order.) Courts have held that restricting the disclosure of information to counsel or for purposes of litigation provides sufficient protection for trade secrets. *See, e.g., R.J. Reynolds*

5

*Tobacco v. Philip Morris, Inc.*, 29 Fed. App'x 880, 882 (3d Cir. 2002) (holding that a third party's purported trade secrets relevant to antitrust case were sufficiently protected by an order that the information would be "used only for the purposes of the instant litigation"); *Columbus Drywall & Insulation, Inc. v. Masco Corporation*, No. 2:06-MC-0034, 2006 WL 2871834 at *2 (S.D. Ohio Aug. 7 2006) (refusing to quash subpoena to third-party competitor for data relevant to antitrust case due to existence of protective order). A court will not presume that the parties will not comply with a protective order. *See Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987). This Court frequently will order the parties to enter into a confidentiality agreement to resolve confidentiality concerns. *See Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369 (S.D. Fla. 2009) ("Nonetheless, mindful of Defendant's privacy concerns, the Court orders the information disclosed as a result of the subpoena be subject to a confidentiality agreement which shall limit disclosure of the documents to the parties in the case, their agents and attorneys, and only for purposes of the case. Said confidentiality agreement shall be prepared by counsel for Plaintiffs and executed by Plaintiffs and Plaintiffs' attorneys and then forwarded to Defendant for his signature within five days from the date hereof.")

Thus, adequate provision has been made for the protection of any confidential All-Tag information. Furthermore, the Eleventh Circuit has rejected broad-based, all-or-nothing objections on discovery, including on issues with respect to confidentiality. *See In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 1000-01

(11th Cir. 2012). All-Tag should be ordered to produce documents responsive to Checkpoint's subpoenas.[3]

### B. All-Tag Should Be Compelled To Present A Rule 30(b)(6) Corporate Representative.

To the extent that All-Tag objects to the disclosure of information in a deposition, the protective order also protects deposition testimony, and thus any such objection is meritless. (Ex. 2, Amended Stipulated Protective Order.)

The other concern that counsel for All-Tag expressed is that All-Tag's President, Mr. Stuart Seidel, is not available for a deposition. But under Rule 30(b)(6), All-Tag may designate and prepare a different witness, and need not produce Mr. Seidel. All-Tag can fulfill its duty to produce a deponent notwithstanding Mr. Seidel's schedule.

Checkpoint repeatedly requested depositions dates in the interest of accommodating All-Tag's scheduling needs and reducing burdens on All-Tag as required under Rule 45(c). All-Tag provided dates, but then withdrew them. All-Tag should now be ordered to designate a witness to appear on a date certain—whether it is Mr. Seidel or another adequately prepared corporate representative.

---

[3] Checkpoint would accept as compliant a production similar in scope to its latest proposal to All-Tag: a summary that indicates, for each All-Tag customer, the quantity of each of All-Tag's EAS products All-Tag sold to that customer, by year; plus All-Tag's aggregate revenues from the sale of EAS products, by year.

## REQUESTED RELIEF

Checkpoint hereby requests that this Court order All-Tag to (1) produce documents responsive to its November 13, 2012 and December 20, 2012 subpoenas on or before March 4, 2013, and (2) designate a Rule 30(b)(6) witness to sit for a deposition on or before March 22, 2013 on the topics that Checkpoint noticed in its January 4, 2013 subpoena.

Dated:  February 27, 2013

                                                  Respectfully submitted,

*/s/ Edward M. Mullins*
Edward M. Mullins (Fla. Bar No. 863920)
emullins@astidavis.com
ASTIGARRAGA DAVIS MULLINS
  & GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida  33131
Telephone:  (305) 372-8282
*Local Counsel for Defendant*

Robert J. Palmersheim (*palmersheim@sw.com*)
Marcus D. Fruchter* (*fruchter@sw.com*)
Lesley G. Smith (*smith@sw.com*)
Nicholas A. Gowen (*gowen@sw.com*)
Bradley W. Moore (*moore@sw.com*)
Chad E. Bell (*cebell@sw.com*)
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois  60606
Telephone:  (312) 701-9300
**Pro hac vice motion forthcoming*

James F. McCarthy, III (*jmccarthy@katzteller.com*)
KATZ, TELLER, BRANT & HILD
2400 ChemedCenter
255 East Fifth Street
Cincinnati, Ohio  45202-4724
Telephone:  (513) 721-4532

*Lead Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFIY that a true and correct copy of the foregoing has been furnished by Email Transmission and U.S. First Class Mail to Michael J. Eisler, Straus and Eisler, P.A., meisler@strauseisler.com, 2500 Weston Road, Suite 213, Weston, Florida 33331 on this 27th day of February 2013.

/s/ Edward M. Mullins
Edward M. Mullins